THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DATANET LLC,

              Plaintiff,

    v.

MICROSOFT CORPORATION,

              Defendant.

Case No. 2:22-cv-01545-TL

**DEFENDANT MICROSOFT CORPORATION'S MOTION FOR JUDGMENT UNDER RULE 12(C) OF PATENT INELIGIBILITY**

NOTE ON MOTION CALENDAR:
March 3, 2023

ORAL ARGUMENT REQUESTED

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................... 2

III.    LEGAL STANDARDS ........................................................................................ 6

   A.   Rule 12(c) – Judgment on the Pleadings ................................................... 6

   B.   Section 101 – Patent Eligible Subject Matter ........................................... 6

IV.     ARGUMENT ....................................................................................................... 7

   A.   This Motion should be resolved on the pleadings under Rule 12(c). ......... 7

   B.   The '478 and '348 Patents are Invalid Under Section 101 ......................... 9

     1.   Step One: The '478 and '348 Patents are Directed to Unpatentable Abstract Ideas..... 9

     2.   Step Two: The '478 and '348 Patents Provide No Inventive Concept. ...................... 14

     3.   Claim 1 of the '478 Patent and Claim 15 of the '348 Patent are Representative........ 15

   C.   The '850 Patent is Invalid Under Section 101. ......................................... 17

     1.   Step One: The Asserted Claims of the '850 Patent are Directed to an Unpatentable Abstract Idea........................................................................... 17

     2.   Step Two: The Asserted Claims of the '850 Patent Provide No Inventive Concept... 19

     3.   Claim 10 of the '850 Patent is Representative. ......................................... 21

V.      CONCLUSION .................................................................................................. 21

DEFENDANT'S MOTION FOR JUDGMENT UNDER
RULE 12(C) - Page i
(Case No. 2:22-cv-01545-TL)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Texas, LLC v. DIRECTV, LLC,*
  838 F.3d 1253 (Fed. Cir. 2016)....................................................................................6, 18

*Alice Corp, Pty. v. CLS Bank Int'l,*
  573 U.S. 208 (2014).................................................................................................. *passim*

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,*
  841 F.3d 1288 (Fed. Cir. 2016).............................................................................................7

*Appistry, Inc. v. Amazon.com, Inc.,*
  No. C15-311, 2015 WL 4210890 (W.D. Wash. July 9, 2015) ...............................................8

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.),*
  687 F.3d 1266 (Fed. Cir. 2013).............................................................................................8

*Barbaro Techs., LLC v. Niantic, Inc.,*
  475 F. Supp. 3d 1007 (N.D. Cal. 2020) ................................................................................8

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.,*
  778 F. App'x 882 (Fed. Cir. 2019) .......................................................................................18

*BSG Tech LLC v. Buyseasons, Inc.,*
  899 F.3d 1281 (Fed. Cir. 2018)......................................................................................14, 21

*Data Scape Ltd. v. Western Digital Corp.,*
  816 F. App'x 461 (Fed. Cir. 2020) .......................................................................................11

*Dropbox, Inc. v. Synchronoss Techs., Inc.,*
  371 F. Supp. 3d 668 (N.D. Cal. 2019) ..................................................................................8

*Dropbox, Inc. v. Synchronoss Techs., Inc.,*
  815 F. App'x 529 (Fed. Cir. 2020) ..................................................................................18, 20

*Elec. Power Grp., LLC v. Alstom S.A.,*
  830 F.3d 1350 (Fed. Cir. 2016)..................................................................................10, 19, 20

*Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.,*
  132 F.3d 526 (9th Cir. 1997) .................................................................................................6

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**Cases**

*In re Greenstein*,
774 F. App'x 661 (Fed. Cir. 2019) ...................................................................13

*iLife Techs., Inc. v. Nintendo of Am., Inc.*,
839 F. App'x 534 (Fed. Cir. 2021) ..................................................................15

*Int'l Bus. Mach. Corp. v. Zillow Grp., Inc.*,
No. 2-20-cv-1130, 2022 WL 704137 (W.D. Wash. Mar. 9, 2022)........................16

*Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*,
50 F.4th 1371 (Fed. Cir. 2022) .............................................................10, 14

*Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*,
549 F. Supp. 3d 1247 (W.D. Wash. 2021), *aff'd*, 50 F.4th 1371 (Fed. Cir.
2022) .........................................................................................2, 7, 8

*Intell. Ventures I LLC v. Cap. One Fin. Corp.*,
850 F.3d 1332 (Fed. Cir. 2017)........................................................................15

*Intell. Ventures I LLC v. Capital One Bank*,
792 F.3d 1363 (Fed. Cir. 2015).................................................................. *passim*

*Internet Patents Corp, v. Active Network, Inc.*,
790 F.3d 1343 (Fed. Cir. 2015).........................................................................6

*Interval Licensing LLC v. AOL Inc.*,
193 F. Supp. 3d 1184 (W.D. Wash. 2016).........................................................8

*In re Killian*,
45 F.4th 1373 (Fed. Cir. 2022) ..................................................................7, 10

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ..........................................................................6

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
566 U.S. 66 (2012)..........................................................................................6

*Mortg. Application Techs., LLC v. MeridianLink, Inc.*,
839 F. App'x 520 (Fed. Cir. 2021) ...................................................................8

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**Cases**

*Mortg. Grader, Inc. v. First Choice Loan Servs., Inc.*,
811 F.3d 1314 (Fed. Cir. 2016)..................................................................15

*OIP Techs., Inc. v. Amazon.com, Inc.*,
788 F.3d 1359 (Fed. Cir. 2015)..................................................................13

*Open Text S.A. v. Box, Inc.*,
78 F. Supp. 3d 1043 (N.D. Cal. 2015) ..........................................................7

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*,
522 F.3d 1049 (9th Cir. 2008) ......................................................................6

*RingCentral, Inc. v. Dialpad, Inc.*,
372 F. Supp. 3d 988 (N.D. Cal. 2019) ........................................................12

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
873 F.3d 905 (Fed. Cir. 2017).......................................................................6

*Sensormatic Elecs., LLC v. Wyze Labs, Inc.*,
No. 2020-2320, 2021 WL 2944838 (Fed. Cir. July 14, 2021)..............15, 21

*TDE Petroleum Data Sols., Inc., v. AKM Enter., Inc.*,
657 F. App'x 991 (Fed. Cir. 2016) .............................................................19

*In re TLI Commc'ns LLC Patent Litig.*,
823 F.3d 607 (Fed. Cir. 2016)........................................................7, 10, 18

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014).......................................................................8

*Univ. of Fla. Research Found. v. Gen. Elec. Co.*,
916 F.3d 1363 (Fed. Cir. 2019)...................................................................19

*Voip-Pal.Com, Inc. v. Apple Inc.*,
375 F. Supp. 3d 1110 (N.D. Cal. 2019) ........................................................8

*Voit Technologies, LLC v. Del-Ton, Inc.*,
757 F. App'x 1000 (Fed. Cir. 2019) .....................................................10, 11

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**Cases**

*Weisner v. Google*,
  51 F.4th 1073 (Fed. Cir. 2022) ...........................................................................12, 20

*Whitserve LLC v. Dropbox, Inc.*,
  854 F. App'x 367 (Fed. Cir. 2021) .......................................................................11, 12

**Other Authorities**

37 C.F.R. 1.75(c)...............................................................................................................16

Rule 12 ..............................................................................................................................8

Rule 12(b)(6) ....................................................................................................................6

Rule 12(b)(6) and 12(c) ....................................................................................................7

Rule 12(c)..................................................................................................................2, 6, 7, 8

DEFENDANT'S MOTION FOR JUDGMENT UNDER
RULE 12(C) - Page v
(Case No. 2:22-cv-01545-TL)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

## I.   INTRODUCTION

Plaintiff Datanet LLC ("Datanet") alleges that Defendant Microsoft Corporation infringes several claims of U.S. Patent Nos. 8,473,478 (the "'478 Patent"), 9,218,348 (the "'348 Patent"), and 10,585,850 (the "'850 Patent") (collectively, the "Asserted Patents").  But Datanet cannot prevail on its allegations because the Asserted Patents are directed to patent-ineligible subject matter under 35 U.S.C. § 101 and, as a result, are invalid as a matter of law.

The Asserted Claims are pure data processing claims directed to methods for archiving or restoring files.  The claims are akin to fundamental archiving operations that existed well before the advent of computers and electronic storage devices—for example, librarians, secretaries and paralegals have been moving, archiving and restoring files for centuries.  The claims use functional language focused on the results of each step, whereby data is detected and moved from one place to another.  For the '478 and '348 Patents, the claims recite the functional results of "detecting," "creating," "storing," "searching," and "moving" files, as well as "updating" information.  The '850 Patent claims recite the functional results of "presenting" and "retrieving" information or files.  But none of the claims say *how* to do so.  Instead, the claims recite only the abstract data actions, along with generic computer components, such as "storage locations," an "operating system," and a "database"—each used according to their ordinary functions for detecting, storing, and moving data.  There is nothing in the claims suggesting that these well-known components operate in any unique or inventive manner.

Datanet cannot salvage claims directed to an abstract idea by trying to characterize the claims in its Complaint as "improv[ing] computer functionality," "address[ing] the failings that are unique to data storage networked devices," or "relat[ing] to computer-specific improvements." None of these conclusory statements are tied to the claims, and none go beyond the abstract idea itself.  No genuine factual issue can preclude judgment at this stage.

Datanet will surely argue that the Court should defer a § 101 decision until after claim construction and expert discovery.  But this would be a waste of resources, and this District has

DEFENDANT'S MOTION FOR JUDGMENT UNDER
RULE 12(C) - Page 1
(Case No. 2:22-cv-01545-TL)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

repeatedly determined (indeed, it has encouraged determining) that patents are invalid under § 101 on the pleadings.  As this Court has recognized: "Patent eligibility can be determined without the aid of expert testimony, [] and claim construction is not a prerequisite to § 101 review."  *Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*, 549 F. Supp. 3d 1247, 1256 (W.D. Wash. 2021), *aff'd*, 50 F.4th 1371 (Fed. Cir. 2022) (granting in part Rule 12(c) motion as to 2 of 4 challenged patents on § 101 grounds).  The Court and parties should not waste further resources on ineligible claims where "§ 101 deficiencies are of the type that the Supreme Court has advised should 'be exposed at the point of minimum expenditure of time and money by the parties and the court.'"  *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)).

Thus, Microsoft respectfully requests the Court determine under Rule 12(c) that the claims of the Asserted Patents are invalid under § 101.

## II.   **FACTUAL BACKGROUND**

Each of the Asserted Patents is titled "Automatic real-time file management method and apparatus," and the claims are generally directed to methods for file archiving and restoration.

In the "Background of the Invention," the Asserted Patents describe certain prior art methods and apparatuses for "data preservation and integrity," including "manual backup systems," "schedule based backup systems," and "mirroring backup systems." Ex. 1, '478 Patent at 1:59-63.[1]  For the "manual backup," the Asserted Patents describe a user selecting files to be backed up and using the "built in backup procedure for the corresponding application" or "manually" copying "the selected files to a desired backup storage media."  *Id.* at 1:64-2:2. Problems identified with the "manual backup" method include requiring a user to familiarize herself with "various methods for performing backup," a user forgetting "to backup or electing not to on a given occasion," and restricting use of the system during the backup procedure.  *Id.* at 2:3-14.  For the "schedule based backup systems," the Asserted Patents describe performing a backup

---

[1] Because the three Asserted Patents share a common specification, citations to one Asserted Patents' specification correspond to identical disclosures in the other Asserted Patents.

DEFENDANT'S MOTION FOR JUDGMENT UNDER
RULE 12(C) - Page 2
(Case No. 2:22-cv-01545-TL)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

"according to a schedule." *Id.* at 2:15-17.  Cited disadvantages for this option include being "frequently confusing and cumbersome." *Id.* at 2:17-28.  For the "mirroring backup systems," which the Asserted Patents describe as the "most comprehensive," the "backup drive becomes a mirror image of the source drive" so "everything that happens to the source storage device immediately happens to the backup storage device." *Id.* at 2:29-36.  Disadvantages identified for this option include accidentally deleting a file from the source disk and requiring separate backup disks for each source disk." *Id.* at 2:37-47.

Given the prior art's alleged deficiencies, the Asserted Patents describe a need for (i) "a file capture, preservation and management system that captures files just before and/or just after they have been changed to minimize loss of data between backup events"; (ii) a "file capture and preservation system that captures files even when the destination storage medium for the files is unavailable"; and (iii) "a system that allows users to recover easily and quickly from any time of information loss…failed software installations or updates, hardware failures…, and lost or stolen laptop computers." *Id.* at 2:56-3:3; *see also id.* at 3:7-21.

Figure 1 (below, right) "illustrates a block diagram of a computing device in accordance" with the alleged invention. *Id.* at 3:54-55. According to the specification, Figure 1 shows "a computing device 5 including a file capture block 10 (or file capturer), a smart data management block 15 (or smart data manager), an input buffer 20, output buffer(s) 25, and a database 30." *Id.* at 4:63-67.  It also shows storage device 35, which "may be either internal



FIGURE 1

or external to computing device 5." *Id.* at 4:67-5:2.  The specification explains that "[t]he invention functions in conjunction with a resident program on computing device 5." *Id.* at 5:2-3.

The "file capture block 10 detects an instruction to perform an operation on an operating file initiated by the resident program of computing device 5," and "[a]t a moment temporally proximate to when the resident program performs the operation…file capture block 10 captures the operating file or portions thereof."  *Id.* at 5:4-12.  Then "file capture block 10 causes the location of the captured operating file to be recorded in database 30," and "a record of each version of the operating file" is created.  *Id.* at 5:15-21.

The Asserted Patents discuss certain "examples…directed to embodiments of the invention specific to operations performed by a user program."  *Id.* at 6:45-47.  The examples include "File Capture at File Open," "File Capture in the 'RENAME' Operation," and "File Capture in the 'Delete' Operation."  *Id.* at 6:54-8:3.

Claim 1 of the '478 Patent is exemplary and recites a "method for archiving files":

1. In a computing device, a method for archiving files comprising:

detecting an instruction by an operating system to perform an operation on an operating file;

creating an archive file from the operating file and storing the archive file in a temporary first storage location temporally proximate to the operation being performed on the operating file and responsive to detecting the instruction;

searching the first temporary storage location for the archive file responsive to the occurrence of a first event; and

moving the archive file to a second storage location responsive to a second event, the second storage location being a permanent storage location,

after storing the archive file in the first temporary storage location, updating a database to indicate that the archive file is located in the first temporary storage location;

determining a final destination for the archive file;

moving the archive file from the first temporary storage location to an intermediate storage location;

updating the database to indicate that the archive file is located in the intermediate storage location; and

after moving the archive file to the second storage location, updating the database to indicate that the archive file is located in the second storage location.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

Claim 15 of the '348 Patent is also exemplary and, like claim 1 of the '478 Patent, recites a "method for archiving files":

> 15. A method for archiving files, comprising steps of (a) to (d) following:
>
> (a) the step of detecting an instruction by a resident program in a computing device for performing an operation on an operating file;
>
> (b) the step of creating an archive file from the operating file and storing the archive file in a temporary storage location temporally proximate to the operation being performed on the operating file and responsive to detecting the instruction;
>
> (c) the step of identifying presence of the archive file in the temporary storage location responsive to the occurrence of a first event; and
>
> (d) the step of transmitting the archive file to a second storage location responsive to a second event, the second storage location being an intermediate or a permanent storage location, wherein the first event is different from the second event.

Claim 10 of the '850 Patent is likewise illustrative and recites a "method of restoring a file to a previous version":

> 10. A method of restoring a file to a previous version of the file, a current version of the file being available at a local storage location, comprising the steps of:
>
> (A) presenting information for a collection of one or more previous versions of the file, the information for the collection including information indicative of at least one or more of previous versions of the file, wherein a restorable representation of each version, V, of the previous versions, is retrievable from a remote storage location, the restorable representation having at least information required for recovering the version V, the remote storage location being accessible through a network;
>
> (B) responsive to a selection to preview a selected previous version of the file based on the presented information for the collection of (A), presenting a presentable representation of the selected previous version, the selected previous version being one of the previous versions of the file in the presented information for the collection, the presentable representation having at least information required for presenting at least a portion of the selected previous version;
>
> (C) responsive to a selection to restore the selected previous version, retrieving the restorable representation of the selected previous version from the remote storage location and storing the selected previous version as the current version on the local storage location, the selected previous version available from the restorable representation of the selected previous version.

DEFENDANT'S MOTION FOR JUDGMENT UNDER RULE 12(C) - Page 5
(Case No. 2:22-cv-01545-TL)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1 | **III.**   **LEGAL STANDARDS**

2 |     **A.**   **Rule 12(c) – Judgment on the Pleadings**

3 | After the pleadings are closed, a party may move for judgment on the pleadings.  Fed. R.

4 | Civ. P. 12(c).  Because a motion for judgment on the pleadings is "functionally identical" to a

5 | motion to dismiss, the standard for a Rule 12(c) motion is the same as for a Rule 12(b)(6) motion.

6 | *See Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1052 n.1 (9th Cir. 2008).  As such,

7 | a court must "accept factual allegations in the complaint as true and construe the pleadings in the

8 | light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519

9 | F.3d 1025, 1031 (9th Cir. 2008).  But "a court need not 'accept as true allegations that contradict

10 | matters properly subject to judicial notice or by exhibit,' such as the claims and the patent

11 | specification."  *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir.

12 | 2017) (citation omitted).  Judgment on the pleadings is appropriate if "taking all allegations in the

13 | pleadings as true, the moving party is entitled to judgment as a matter of law."  *Enron Oil Trading*

14 | *& Transp. Co. v. Walbrook Ins. Co.*, 132 F.3d 526, 528 (9th Cir. 1997) (citation omitted).

15 |     **B.**   **Section 101 – Patent Eligible Subject Matter**

16 | The U.S. Supreme Court articulated a two-step "framework for distinguishing patents that

17 | claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible

18 | applications of those concepts."  *Alice Corp, Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014); *see*

19 | *also Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012).

20 | At step one, a court determines whether the claims at issue are directed to a patent-ineligible

21 | concept.  *Internet Pats. Corp. v. Active Network, Inc*., 790 F.3d 1343, 1346 (Fed. Cir. 2015).  For

22 | this analysis, "the claims are considered in their entirety to ascertain whether their character as a

23 | whole is directed to excluded subject matter."  *Id.*; *Affinity Labs of Texas, LLC v. DIRECTV, LLC*,

24 | 838 F.3d 1253, 1257 (Fed. Cir. 2016) (Step One requires "look[ing] at the 'focus of the claimed

25 | advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded

26 | subject matter").  Courts typically "examine earlier cases in which a similar or parallel descriptive

DEFENDANT'S MOTION FOR JUDGMENT UNDER
RULE 12(C) - Page 6
(Case No. 2:22-cv-01545-TL)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

nature can be seen" as part of this determination.  *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016); *see In re Killian*, 45 F.4th 1373, 1383 (Fed. Cir. 2022) ("Examination of earlier cases 'is the classic common law methodology for creating law when a single governing definitional context is not available,'" and "the Supreme Court has decided cases arising under § 101 through comparison to its prior opinions").

If the claims are directed to a patent-ineligible concept, the court proceeds to step two. *Alice*, 573 U.S. at 217–18.  At step two, a court determines whether the claims provide any "'inventive concept'—*i.e.*, an element or combination of elements…sufficient to ensure that the patent…amounts to significantly more than a patent upon the [ineligible concept] itself."  *Id.* (citation omitted).  But "mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea."  *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016).  "Rather, the components must involve more than performance of well-understood, routine, conventional activities previously known…."  *Id.*  And "appending conventional steps, specified at a high level of generality, [is] not enough to supply an inventive concept."  *Alice*, 573 U.S. at 222 (internal quotation marks omitted).

## IV.   ARGUMENT

### A.   This Motion should be resolved on the pleadings under Rule 12(c).

This Motion is properly resolved at this stage because there are no issues of fact and no issues requiring claim construction or expert discovery.  Indeed, this Court and others within this Circuit have noted a preference for resolving § 101 issues early, explaining that "Rule 12(b)(6) and 12(c) motions are appropriate vehicles for considering the question of patentability."  *Int'l Bus. Machs.*, 549 F. Supp. 3d at 1256 (collecting cases); *Open Text S.A. v. Box, Inc.*, 78 F. Supp. 3d 1043, 1045 (N.D. Cal. 2015) ("Challenges to patentability under Section 101 may be brought based solely on the pleadings, including on a Rule 12(c) motion….").  This is because "[t]he public interest…served by 'eliminating defective patents…counsels strongly in favor of resolving subject matter eligibility at the threshold of litigation.'"  *Id.* (quoting *Ultramercial, Inc. v. Hulu, LLC*, 772

F.3d 709, 719 (Fed. Cir. 2014)).  Thus, "courts can, and regularly do, decide the issue of § 101 invalidity on a Rule 12(c) motion." *Barbaro Techs., LLC v. Niantic, Inc*., 475 F. Supp. 3d 1007, 1011 (N.D. Cal. 2020); *see also Interval Licensing LLC v. AOL Inc.*, 193 F. Supp. 3d 1184, 1186 (W.D. Wash. 2016) (granting Rule 12(c) motion that claims were invalid under § 101); *Appistry, Inc. v. Amazon.com, Inc.*, No. C15-311, 2015 WL 4210890 (W.D. Wash. July 9, 2015) (same).

As discussed further below, Datanet does not plead any facts in the Complaint that are rooted in the claimed technology or otherwise support a conclusion that the Asserted Patents confer any new computer functionality or improvements to technological processes.  And "attorney arguments…do not create a factual dispute" for a Rule 12 motion.  *Dropbox, Inc. v. Synchronoss Techs., Inc*., 371 F. Supp. 3d 668, 693 (N.D. Cal. 2019); *Voip-Pal.Com, Inc. v. Apple Inc*., 375 F. Supp. 3d 1110, 1145 (N.D. Cal. 2019) (same).  There are no factual allegations that, if taken as true, prevent resolving the eligibility issue as a matter of law that this stage.

Nor does any claim construction issue preclude judgment on the pleadings.  This Court has explained that "claim construction is not a prerequisite to § 101 review." *Int'l Bus. Machs.*, 549 F.Supp.3d at 1256 (citation omitted).  And the Federal Circuit has confirmed the same.  *See, e.g.*, *Mortg. Application Techs., LLC v. MeridianLink, Inc.*, 839 F. App'x 520, 524 (Fed. Cir. 2021) (rejecting argument that the court should have delayed § 101 decision until after claim construction); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.)*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2013) ("claim construction is not an inviolable prerequisite to a validity determination under § 101").  This is especially true where, as here, no interpretation of any claim terms would render the claims patentable.  *See, e.g.*, *Ultramercial*, 772 F.3d at 719 ("No formal claim construction was required because the asserted claims disclosed no more than an abstract idea garnished with accessories and there was no reasonable construction that would bring [them] within patentable subject matter" (internal quotations omitted, alteration in original)).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

**B.      The '478 and '348 Patents are Invalid Under Section 101.**

      **1.      Step One: The '478 and '348 Patents are Directed to Unpatentable Abstract Ideas.**

Representative claim 1 of the '478 Patent and representative claim 15 of the '348 Patent recite methods for "archiving files." But each claim recites the method using result-based, functional language that represents no more than the ideas of detecting, moving, storing, and recording data.   These are pure data processing claims of the type that has been repeatedly determined unpatentable by the Federal Circuit.

      **a.      The claims use result-based language to claim functional results without explaining how the functions are achieved.**

Column 1 of the table below identifies each generic component (**bold**) and its generic data processing function (*blue italics*) for each limitation of the '478 Patent's claim 1.   Column 2 summarizes the abstract, data processing function of each limitation.

| Claim Limitation | Abstract Function |
|---|---|
| 1. In a **computing device**, a method for archiving files comprising: | Preamble |
| *detecting an instruction* by an **operating system** to perform an operation on an operating file; | Detecting data |
| *creating an archive file* from the operating file and *storing the archive file* in a temporary first **storage location** temporally proximate to the operation being performed on the operating file and responsive to detecting the instruction; | Creating and storing data |
| *searching* the first temporary **storage location** for the archive file responsive to the occurrence of a first event; and | Searching for data |
| *moving the archive file* to a second **storage location** responsive to a second event, the second storage location being a permanent storage location, | Moving and storing data |
| after *storing the archive file* in the first temporary **storage location**, *updating* a **database** to indicate that the archive file is located in the first temporary **storage location**; | Storing and recording data |
| *determining a final destination* for the archive file; | Determining location |
| *moving the archive file* from the first temporary **storage location** to an intermediate **storage location**; | Moving and storing data |
| *updating* the **database** to indicate that the archive file is located in the intermediate **storage location**; and | Recording data |
| after *moving the archive file* to the second **storage location**, *updating* the **database** to indicate that the archive file is located in the second **storage location**. | Recording data |

DEFENDANT'S MOTION FOR JUDGMENT UNDER
RULE 12(C) - Page 9
(Case No. 2:22-cv-01545-TL)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

The same analysis applies to the '348 Patent's claim 15, which Datanet also charted in its Complaint.  Claim 15 of the '348 Patent, like claim 1 of the '478 Patent, recites "[a] method for archiving files."  Ex. 2, '348 Patent at claim 15.  It likewise recites the steps of (i) "detecting an instruction…"; (ii) "creating an archive file…"; (iii) "storing the archive file…"; (iv) "identifying presence of the archive file"; and (v) "transmitting the archive file." *Id.*  In other words, claim 15 likewise focuses on analyzing, moving, storing, and recording data.

Despite the claims requiring the functional results of "detecting," "creating," "storing," "searching," and "moving" files, as well as "updating the database," the claims do not "describe how to achieve these results in a non-abstract way."  *Two-Way Media*, 874 F.3d at 1337 (Fed. Cir. 2017) (discussing claims that required the functional results of "converting," "routing," "controlling," "monitoring," and "accumulating records"); *TLI Commc'ns*, 823 F.3d at 610, 612 (patent "fail[ed] to provide any technical details for the tangible components" and instead "describe[d] the system and methods in purely functional terms," such as "storing, receiving, and extracting data").  There are no limiting rules, algorithms, or instructions as to how to accomplish any of these tasks. *See Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1378 (Fed. Cir. 2022) (patent directed to abstract idea where it was "result-oriented, describing required functions (presenting, receiving, selecting, synchronizing), without explaining how to accomplish any of the tasks").  Nor do the claims recite "any particular assertedly inventive technology for performing those functions." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016).

### b.    The claims fall into a familiar class of abstract ideas.

The Federal Circuit has routinely found claims like those at issue here to be directed to patent ineligible abstract ideas.  For example, in *In re Killian*, the Federal Circuit found claims "for determining eligibility for …[SSDI] benefits through a computer network" were directed to the abstract idea of "collecti[ng]… information, comprehending the meaning of that collected information, and indicat[ing]… the results, all on a generic computer network operating in its normal, expected manner."  45 F.4th at 1380.  In *Voit Techs., LLC v. Del-Ton, Inc.*, 757 F. App'x

1000 (Fed. Cir. 2019), claims reciting a method providing "secure interactive communication of text and image information between a central server computer and one or more [remote] client computers" for "storing and retrieving files" were "directed to the abstract idea of entering, transmitting, locating, compressing, storing, and displaying data." *Id.* at 1001-02.  In *Data Scape Ltd. v. W. Digit. Corp.*, 816 F. App'x 461 (Fed. Cir. 2020), patents "focused on the selective transfer of music files from a first storage medium to a second storage medium" were "directed to the abstract idea of selective data storage, transfer, and processing." *Id.* at 462-63.

Particularly instructive is the Federal Circuit's decision in *Whitserve LLC v. Dropbox, Inc.*, 854 F. App'x 367 (Fed. Cir. 2021).  In that case, the patent-at-issue generally related to backing up internet-based data to a client's computer and disclosed software capable of "modifying" the data records by "updating and deleting" data in the data records.  *Id.* at 368.  The Federal Circuit determined that "the system is for requesting, transmitting, receiving, copying, deleting, and storing data records."  *Id.* at 371.  Although the claims recited a "computer," "database," "data processing software," and Internet communication, the specification explained that the "computer" was merely "central" or belonging to a "client"; the "database" simply "contain[s] a plurality of data records"; and the "software" is able to "display[]" data records by "updating" and "deleting" data.  *Id.*  Although the purported advance over the prior art was the "onsite backup of data" and a "system for onsite backup of internet-based data processing systems," the specification did not "explain the technological processes underlying the purported technological improvement."  *Id.* at 372.  Instead, the claims relied on "the ordinary storage and transmission capabilities of computers within a network and apply the ordinary functionality in the particular context of onsite backup." *Id.*  As the Court explained, "[s]uch transmitting, saving, and storing of client records is a fundamental business that 'existed well before the advent of computers and the Internet.'"  *Id.* at 371 (citation omitted).  Thus, the claim was directed to an abstract idea.  *Id.*

The logic of *Whitserve* applies equally here.  Although the claims recite a "computing device," "operating system," "database," and certain "storage location[s]," the specification's

1   description of these elements confirms they are generic, as discussed below.  The specification

2   does not explain any processes underlying any purported technological improvement.  Instead, like

3   the *Whitserve* claims, the claims here rely on "the ordinary storage and transmission capabilities"

4   of well-known components "and apply the ordinary functionality in the particular context of" file

5   archiving.  *Id.* at 372.  In other words, the claims are directed to the generic and well-known

6   functions of general data processing, and the steps of analyzing, moving, storing, and recording

7   information, records, or files "existed well before the advents of computers and the Internet," *id.*

8   at 371, or so-called "data storage network environments," Dkt. 1 at p. 4.  Thus, *Whitserve*'s

9   conclusion holds true here too: the claims are directed to a patent-ineligible, abstract idea.

              **c.**        **Datanet's allegations do not render the claim any less abstract.**

10        Datanet alleges that the claims "are directed to improvements in computer functionality

11  when applied to data storage, and address the failings that are unique to data storage network

12  environments."  Dkt. 1 at p. 4.  According to the Complaint, the patents "improve[] computer

13  functionality" because they "optimize the use of various storage locations to capture changes to

14  files in real time (or near real time), along with database(s) to track the movement of the files….,

15  so that previous versions…can be efficiently retrieved and restored, without overburdening the

16  network resources…. *Id.* at ¶¶ 28, 30.  Datanet also alleges that the claims "specific interactions

17  between hardware and software computer components…accomplish the data backup storage,"

18  thereby improving "the computer functionality."  *Id.* at ¶¶ 29, 31.  Finally, Datanet alleges that the

19  claims "save user's time, computer resources, and network bandwidth over prior approaches."  *Id.*

20        These allegations are inconsequential for at least three reasons.  ***First***, none of these

21  purported "improvements" or benefits are captured in the claims.  *See Weisner v. Google*, 51 F.4th

22  1073, 1083 (Fed. Cir. 2022) ("[T]he purported benefit of limiting data accumulation to members

23  is not captured in the claims and, accordingly, does not shift the focus of the claims away from the

24  abstract idea…."); *RingCentral, Inc. v. Dialpad, Inc.*, 372 F. Supp. 3d 988, 1003 (N.D. Cal. 2019)

25  (rejecting argument "that the claimed invention 'reduces the risk of synchronization errors caused

26  DEFENDANT'S MOTION FOR JUDGMENT UNDER
RULE 12(C) - Page 12
(Case No. 2:22-cv-01545-TL)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

by connectivity issues, data corruption, or other technical issues' and 'preserves computer and network resources and is more efficient than conventional processes'" where the "arguments are not tied to anything in the claims or specifications that must form the basis of the … analysis.").

**Second**, even if the patents "save[d] user's time, computer resources, and network bandwidth over prior approaches," Dkt. 1 at p. 5, the Federal Circuit has made "clear that merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea." *Intell. Ventures I LLC v. Cap. One Bank*, 792 F.3d 1363, 1370 (Fed. Cir. 2015); *see also In re Greenstein*, 774 F. App'x 661, 665 (Fed. Cir. 2019) ("We have also rejected the argument…that performing calculations on a computer provides an inventive concept because the computer is much faster and more efficient."); *OIP Techs., Inc. v. Amazon.com, Inc*., 788 F.3d 1359, 1363 (Fed. Cir. 2015) ("[R]elying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible.").

**Third**, the claims do not support Datanet's assertion that the purported inventions address "failings that are unique to data storage network environments." Dkt. 1 at p. 4.  Instead, the claimed functionality is age-old activity that existed well before the advent of computers and data storage networks.  For example, in the age-old process of "redlining," people used a ruler and red pen to draw strikethrough lines across hard copy documents to indicate deletions while double-underlining to indicate insertions. A next-level reviewer would then compare the original with the marked-up document to review the changes—i.e., "blacklining."  And the notion of "track[ing] the movement of files" has been around since card catalogs in brick-and-mortar libraries or office recordkeeping.  Thus, Datanet's attempt to cabin the claims to "data storage network environments" does not save them. *Intell. Ventures I*, 792 F.3d at 1366 ("An abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as the Internet.").

If anything, Datanet's allegations underscore the claims' abstract nature.  The claims' purported improvements—*e.g.*, "optimiz[ing] the use of various storage locations" and "efficiently

retriev[ing] and restor[ing]" files (Dkt. 1 at p. 4-5)—are neither a technical improvement tied to a specific apparatus nor an improvement of an existing technological process. Instead, the solution is itself the ineligible abstract idea of analyzing, moving, storing, and recording data. As a result, any alleged benefit "flow[s] from performing the abstract idea," and the claims still fail at Step One. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1288 (Fed. Cir. 2018).

        **2.**        **Step Two: The '478 and '348 Patents Provide No Inventive Concept.**

The claims also contain no "inventive concept" sufficient to transform the abstract idea into patent-eligible subject matter. *See Int'l Bus. Machs.*, 50 F.4th at 1379. Neither patent describes or claims any specialized components or technologies for implementing the abstract idea. Instead, the claims merely apply the abstract idea of analyzing, moving, storing, and recording data with generic computer components, such as "a computing device," a "storage location," "database," "storage device," "network attached storage device," "peer-to-peer storage device," "Internet storage area network," "a non-transitory computer usable medium," and "a processor." None can "transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223; *Intell. Ventures I*, 792 F.3d at 1368 ("Instructing one to 'apply' an abstract idea and reciting now more than generic computer elements performing generic computer tasks does not make an abstract idea patent-eligible.").

The specification confirms that the claims implement the abstract idea with general-purpose computer components. Indeed, the specification expressly defines many of these components in generic terms:

- "Computing Device−a personal computer, a laptop or notebook computer, a server, a hand-held computing device, a PDA or a PAL" where the term is "not specific to any kind of operating system." Ex. 1, '478 Patent at 4:17-24.

- "Storage Location−any storage device, or a buffer, folder, directory or designated area on a storage device." *Id.* at 4:25-26.

- "Operating System (OS)−A computer program that allows system resources such as memory, disk space, and processor usage and makes it possible for the computer to boot up to a human user interface allowing the user to interact with the computer and control its

DEFENDANT'S MOTION FOR JUDGMENT UNDER
RULE 12(C) - Page 14
(Case No. 2:22-cv-01545-TL)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

operation." *Id.* at 4:6-10.

- "Network Attached Storage Device−any storage device connected directly to a network to which a first computing device is also temporarily or permanently connected, or any storage device connected to a second computing device that is also temporarily or permanently connected to the network to which the first computing device is temporarily or permanently connected." *Id.* at 4:29-35.

- "Peer-to-Peer Storage Device−any storage area (device, collection of devices, etc.) that can be accessed by the computing device when it is sharing resources with other network or Internet accessible computers." *Id.* at 4:40-43.

- "Internet storage area network−any storage area (device, collection of devices, etc.) that can be accessed by the computing device when the computing device is temporarily or permanently connected to the Internet." *Id.* at 4:36-43.

For those components not separately defined, there is nothing to suggest they are inventive in structure or function. A "database" is a generic computer component that "do[es] not satisfy the inventive concept requirement." *Mortg. Grader, Inc. v. First Choice Loan Servs., Inc.*, 811 F.3d 1314, 1324-1325 (Fed. Cir. 2016); *Intell. Ventures I*, 792 F.3d at 1368 (no inventive concept where elements, including a database, were "all generic computer elements"). And a "processor" is as generic as they come. *iLife Techs., Inc. v. Nintendo of Am., Inc.*, 839 F. App'x 534, 538 (Fed. Cir. 2021) ("[T]he claim recites only generic computer components, including…a processor, and a communication device."); *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017) (no inventive concept in reciting "a generic computer element—a processor—and a series of generic computer 'components' that merely restate their individual functions").

Because the claim limitations, considered individually and collectively, amount to no more than implementing an abstract idea with conventional technology, there is no inventive concept. *See Alice*, 573 U.S. at 217–18. Thus, the claims also fail at Step Two.

### 3. Claim 1 of the '478 Patent and Claim 15 of the '348 Patent are Representative.

A claim may be considered "representative" if limitations in the remaining claims have no distinctive significance. *Sensormatic Elecs., LLC v. Wyze Labs, Inc.*, No. 2020-2320, 2021 WL

DEFENDANT'S MOTION FOR JUDGMENT UNDER
RULE 12(C) - Page 15
(Case No. 2:22-cv-01545-TL)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

2944838, at *4 (Fed. Cir. July 14, 2021) ("Courts may treat a claim as representative…if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim." (citation omitted)); *Content Extraction*, 776 F.3d at 1348 (treating claims as representative where all claims "are substantially similar in that they recite little more than the same abstract idea"); *Int'l Bus. Mach. Corp. v. Zillow Grp., Inc.*, No. 2-20-cv-1130, 2022 WL 704137 at *1 (W.D. Wash. Mar. 9, 2022) (claims may be treated as representative where there is no "meaningful argument for the distinctive significance of any claim limitations").

There are only minor, insignificant differences among the '478 Patent's claims. Like representative claim 1, independent claims 8–11 recite "a method for archiving files" that includes steps for "detecting an instruction," "creating" a file, "searching" a storage location, and "moving" a file. The only difference is that claims 8–11 add requirements for the first or second events. Attached as Appendix A is a table showing that claim 1 is representative of the other claims.

The '478 Patent's remaining dependent claims are directed to the same subject matter, albeit more narrowly. *See* 37 C.F.R. 1.75(c) ("One or more claims may be presented in dependent form, referring back to and further limiting another claim."). Claims 2 through 5 merely require that the second storage location includes "a personal attached storage device" (claim 2); "a network attached storage device" (claim 3); "a peer-to-peer storage device" (claim 4); or "an Internet storage area network" (claim 5). Claims 6 and 7, in turn, add a "non-transitory computer usable medium" (claim 6) or "a processor" for performing claim 1's method.[2]

For the '348 Patent's representative claim 15, there are no distinctive significance to the limitations in the other claims. Like claim 15, the four other independent claims are directed to a "method for archiving files," and their limitations are nearly identical. Claims 1 and 8 include

---

[2] Claims 6 and 7 reciting "[a]n article of manufacture comprising a computer usable medium" or "comprising a processor" do not change the inquiry or the conclusion. *See CardioNet, LLC v. InfoBionic, Inc.*, 816 F. App'x 471, 475 ("While some of the claims are couched as systems or articles, they essentially recite and are directed to collecting, analyzing, and displaying data by conventional means.").

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

additional limitations updating a database, determining a final destination, and moving the file—all limitations akin to those in representative claim 1 of the '478 Patent, as discussed above. And Claims 12, 13, and 14 add limitations about the nature of the first or second event. Attached as Appendix A is a table showing that claim 15 is representative of the other claims.

The remaining claims are dependent, merely adding a requirement that a storage location include a generic storage device (claims 2-5, 9-11); the claimed method be performed by undefined computer readable code (claim 6), undefined program instruction (claims 17, 29), or a generic processor (claim 7); the data be in a certain format or include other data (claims 19, 20, 21, 22, 26, 27); the data or undefined program have certain generic and functional capabilities or other generic components (claims 18, 24, 30); or the generic functions or components have vague relations to one another (claims 16, 23, 25, 28, 31).

**C.     The '850 Patent is Invalid Under Section 101.**

**1.     Step One: The Asserted Claims of the '850 Patent are Directed to an Unpatentable Abstract Idea.**

The '850 Patent is similarly directed to an abstract idea. Claim 10, which Datanet charted, is only a slight variation on the same abstract idea as claimed in the '478 and '348 Patents. Whereas the '478 and '348 Patent claimed the abstract idea of data processing to archive a file, the '850 Patent claims similar data processing steps to "restor[e] a file to a previous version."

Column 1 of the table below identifies each generic component (**bold**) and its generic data transfer or processing function (*blue italics*) for each limitation of the '850 Patent's claim 10. Column 2 summarizes the abstract, data processing function of each limitation.

| Claim Limitation | Abstract Function |
|---|---|
| 10. A method of restoring a file to a previous version of the file, a current version of the file being available at a local storage location, comprising the steps of: | Preamble |
| (A) *presenting information* for a collection of one or more previous versions of the file, the information for the collection including information indicative of at least one or more of previous versions of the file, wherein a restorable representation of each version, V, of the previous versions, is retrievable from a **remote storage location**, the | Presenting data |

| | |
|---|---|
| restorable representation having at least information required for recovering the version V, the **remote storage location** being accessible through **a network**; | |
| (B) ***responsive to a selection to preview a selected previous version of the file*** based on the presented information for the collection of (A), ***presenting a presentable representation of the selected previous version***, the selected previous version being one of the previous versions of the file in the presented information for the collection, the presentable representation having at least information required for presenting at least a portion of the selected previous version; | Presenting data in response to selection |
| (C) ***responsive to a selection to restore the selected previous version, retrieving the restorable representation of the selected previous version*** from the ***remote storage location*** and ***storing the selected previous version*** as the current version on the **local storage location**, the selected previous version available from the restorable representation of the selected previous version. | Retrieving data in response to selection and storing data |

The character of the claim as a whole is "[a] method of restoring a file to a previous version of the file." Claim 10 begins with "presenting information" that is "for a collection of one or more previous versions" of a file that "is retrievable form a remote storage location." The claim then recites "presenting a presentable representation of the selected previous version" that is "responsive to a selection to preview a selected previous version of the file." From there, the claim requires "retrieving the restorable representation of the selected previous version" that is "responsive to a selection to restore the selected previous version," and then "storing the selected previous version as the current version on the local storage location."

But claim 10 (like the others) never says *how*. There are no technical details, and the claims use purely functional terms. *See TLI Commc'ns*, 823 F.3d at 610. The claim requires results "without offering any technological means of effecting that concept." *Affinity Labs*, 838 F.3d at 1262; *see Bridge & Post, Inc. v. Verizon Commc'ns, Inc*., 778 F. App'x 882, 895 (Fed. Cir. 2019) (reciting "what it does" without explaining "'how it does it'… is an important indicator of whether a claim is directed to an abstract idea").

As a result, the claims fall within the familiar class that the Federal Circuit has found directed to an abstract idea. *E.g.*, *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529,

DEFENDANT'S MOTION FOR JUDGMENT UNDER
RULE 12(C) - Page 18
(Case No. 2:22-cv-01545-TL)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

537 (Fed. Cir. 2020) (claims directed to an abstract idea where "'[f]ormatting' data, 'tagging' data, 'transmitting' data, and 'retrieving' data are generalized steps to be performed on a computer using conventional computer activity"); *Univ. of Fla. Research Found. v. Gen. Elec. Co*., 916 F.3d 1363, 1366-68 (Fed. Cir. 2019) (claims for "receiving…data" from machines, "converting" data, "performing at least one programmatic action," and "presenting" data were directed to abstract idea); *TDE Petroleum Data Sols., Inc., v. AKM Enter., Inc.*, 657 F. App'x 991, 993 (Fed. Cir. 2016) (claim to "automated method for determining the state of a well operation" was directed to abstract idea of "storing, gathering, and analyzing data").

Thus, because the claims recite a "combination of… abstract-idea processes" without "any particular assertedly inventive technology for performing those functions," they are directed to an abstract idea. *Elec. Power Grp.*, 830 F.3d at 1354.

### 2. Step Two: The Asserted Claims of the '850 Patent Provide No Inventive Concept.

At Step Two of the *Alice* inquiry, the '850 Patent does not supply any "inventive concept," because it describes only well-understood, routine, and conventional activity amounting to no more than the abstract idea itself.

The '850 Patent's claims recite common computer components performing only their ordinary functions, including a "remote storage location," "computational machine," "local storage location," "network," and "network attached storage location." But simply reciting computer components "cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223; *see Intell. Ventures I*, 792 F.3d at 1368 ("Instructing one to 'apply' an abstract idea and reciting no more than generic computer elements performing generic computer tasks does not make an abstract idea patent-eligible.").

The specification confirms that each of these computer components are generic and supply no "inventive concept." The specification states that "Storage Location" means "*any* storage device, or a buffer, folder, directory or designated area on a storage device." Ex. 3, '850 Patent at

4:34-35 (emphasis added).   The "remote storage location," "computational machine," "local storage location," and "network attached storage location" terms do not appear in the specification; there is nothing to suggest they perform any unconventional or inventive actions.   And, for "network," the Federal Circuit has "repeatedly held" that invoking "computers and networks that are not even arguably inventive are 'insufficient to pass the test of an inventive concept in the application' of an abstract idea." *Elec. Power Grp.*, 830 F.3d at 1355 (citation omitted).

Nor is there an inventive concept in the ordered combination of the limitations.   Claim 10 uses a "conventional ordering of steps": presenting data for selection, then retrieving data in response to a selection, and finally storing data.   *Two-Way Media*, 874 F.3d at 1339 (describing claim's "conventional ordering of steps—first processing the data, then routing it, controlling it, and monitoring its reception—with conventional technology to achieve its desired result."); *see CardioNet*, 816 F. App'x at 476 (no inventive concept where the steps "recite conventional data processing functions, such as obtaining data, analyzing the data to identify features therein, and displaying the data, and do not recite any specific or inventive steps for doing so").

Datanet alleges in the Complaint that "[t]he technique of previewing multiple previous versions prior to restoring from network storage was not conventional and was not well-understood at the time of the invention."   Dkt. 1 at p. 6.   But this statement "provide[s] no more than a …legal conclusion about the § 101 analysis." *Dropbox*, 815 F. App'x at 538 (rejecting argument that complaint had sufficient factual allegations where it had only "a conclusory statement that 'nothing in the specification describes these concepts as well-understood, routine, or conventional'").

Datanet also alleges that the '850 Patent "improves computer functionality" by "optimiz[ing]….use of various storage locations to capture changes to files in real time (or near real time)," using "database(s) to track the movement of the files between the storage locations, so that previous versions of file(s) can be quickly previewed before being efficiently retrieved and restored," and not "overburdening the network resources."   Dkt. 1 at p. 5.   But, again, the claims capture none of these purported improvements in "computer functionality."   *See Weisner*, 51 F.4th

DEFENDANT'S MOTION FOR JUDGMENT UNDER
RULE 12(C) - Page 20
(Case No. 2:22-cv-01545-TL)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

at 1083.   Even so, the alleged improvements "flow from performing the abstract idea in conjunction with…well-known" components without more.   *BSG*, 899 F.3d at 1288.

Finally, Datanet alleges that the '850 Patent "save[s] user's time, computer resources, and network bandwidth by avoiding the restoration of an unwanted previous versions."   Dkt. 1 at 6. But as discussed above, (i) these alleged benefits of saving time, resources, or bandwidth appear nowhere in the claims (*Cisco*, 813 F. App'x at 498), and (ii) increasing speed or efficiency "does not confer patent eligibility" (*Intell. Ventures I*, 792 F.3d at 1370).

Thus, the claims also fail Step Two of the *Alice* inquiry.

### 3.   Claim 10 of the '850 Patent is Representative.

Claim 10 is representative because the other claims have no distinctive significance. *Sensormatic*, 2021 WL 2944838, at *4.   Independent claims 1 and 18 recite the same basic steps of (i) "presenting information," (ii) "presenting a presentable representation," (iii) "retrieving the restorable representation," and (iv) "storing the selected previous version."   Independent claim 19 recites a variation of the same: "receiving," "displaying, "previewing," and "restoring" data. Attached as Appendix A is a table showing that claim 10 is representative of the other claims.

The dependent claims add minor additional requirements that are not significant for the analysis.   Claims 2, 3, and 11 require use of a generic "application."   Claims 4, 5, 7, 12, 13, and 15 provide more detail on the type or format of the data.   And claims 6, 8, 9, 14, 16, 17, 20, and 21 add further contours about the presentation and retrieval of data.

## V.   <u>CONCLUSION</u>

Microsoft respectfully requests that the Court grant Microsoft's Motion and rule that all claims of the Asserted Patents are invalid as patent ineligible under 35 U.S.C. § 101.

1  Dated: February 9, 2023                    **MORGAN, LEWIS & BOCKIUS LLP**

2                                             By: *s/ Molly A. Terwilliger*
                                              Molly A. Terwilliger, WSBA #28449
3                                             Patty Eakes, WSBA # 18888
                                              1301 Second Avenue, Suite 2800
4                                             Seattle, WA 98101
                                              Phone: (206) 274-6400
5                                             molly.terwilliger@morganlewis.com
                                              patty.eakes@morganlewis.com
6

7                                             Andrew V. Devkar (admitted Pro Hac Vice)
                                              2049 Century Park East, Suite 700
8                                             Los Angeles, CA, 90067-3109
                                              Phone: ((310) 907-1000)
9                                             Andrew.devkar@morganlewis.com

10
                                              Natalie A. Bennett (admitted Pro Hac Vice)
11                                            1111 Pennsylvania Avenue, NW
                                              Washington, DC, 20004-2541
12                                            Phone: (202) 739-3000
                                              Natalie.bennett@morganlewis.com
13
                                              Karon N. Fowler (admitted Pro Hac Vice)
14                                            110 North Wacker Drive, Suite 2800
                                              Chicago, IL, 60606-1511
15                                            Phone: (312) 324-1000
                                              karon.fowler@morganlewis.com
16

17                                            Austin L. Zuck (admitted Pro Hac Vice)
                                              Katerina Hora Jacobson (admitted Pro Hac Vice)
18                                            1400 Page Mill Road
                                              Palo Alto, CA 94304
19                                            Phone: (650) 843-4000
                                              austin.zuck@morganlewis.com
20                                            katerina.horajacobson@morganlewis.com

21                                            *Attorneys for Defendant Microsoft Corporation*

22

23

24

25

26  DEFENDANT'S MOTION FOR JUDGMENT UNDER        **MORGAN, LEWIS & BOCKIUS LLP**
    RULE 12(C) - Page 22                                     ATTORNEYS AT LAW
    (Case No. 2:22-cv-01545-TL)                       1301 SECOND AVENUE, SUITE 2800
                                                          SEATTLE, WASHINGTON 98101
                                                    TEL +1.206.274.6400   FAX +1.206.274.6401

## CERTIFICATION OF WORD COUNT

I certify that this memorandum contains 7,589 words, in compliance with the Local Civil Rules.

*s/ Molly A. Terwilliger*
Molly A. Terwilliger

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401