UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DATANET LLC,<br><br>                Plaintiff,<br><br>    v.<br><br>MICROSOFT CORPORATION,<br><br>                Defendant. | CASE NO. 2:22-cv-1545<br><br>ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS |

Plaintiff Datanet LLC sued Defendant Microsoft Corporation, alleging Microsoft's OneDrive file-backup service infringed upon three patents held by Datanet. Microsoft moved to dismiss the lawsuit, arguing the asserted patents aren't patentable because they represent abstract ideas and lack any inventive concept. Dkt. No. 36. The Court disagrees and DENIES Microsoft's motion for the reasons stated below.

## BACKGROUND

In 2018, Plaintiff Datanet LLC purchased the rights to a portfolio of patents from the software company IPCI, Inc. Dkt. No. 1 at 3. Two decades before, IPCI attempted to "develop an automated, real-time zero-touch data safety, backup, and recovery software product." *Id.* Although it never marketed or sold a finished product, IPCI secured several patents that, at a high level, describe "systems and techniques for archiving and restoring files." *Id.* IPCI assigned

its rights in these patents to Plaintiff, including Patent Numbers 8,473,478 ("'478 Patent"), 9,218,348 ("'348 Patent"), and 10,585,850 ("'850 Patent") (collectively, the "Asserted Patents").[1] *Id.* at 2. Each of the Asserted Patents is titled "Automatic Real-Time File Management Method and Apparatus." *Id.* at 31, 44, 59.

According to the Asserted Patents, protecting and managing data is "one of the greatest challenges" facing IT professionals and computer users alike. Dkt. No. 36-2 at 9. The Asserted Patents claim the prior art methods for "data preservation and integrity" were flawed or inefficient. *Id.* For example, the Asserted Patents claim manual backup systems were only as good as a user's memory to run the backup procedure and they often contained gaps between backups. *Id.* Scheduled backups fared no better because they missed work done between scheduled points and functioned poorly, if at all, if the backup storage device became unavailable. *Id.* Finally, the mirroring technique to backup was susceptible to viruses and offered no protections against accidental deletions. *Id.*

Enter Plaintiff's technology, which "actively monitors a computer's operating system" for file modifications and "[u]pon detecting those operating system activities, the technology initiates, in near real time, a backup operation to a local queue or buffer." Dkt. No. 37 at 6. Once a "suitable backup storage device becomes available, the modified file contents are transmitted to the backup storage device for long-term storage." *Id.* Plaintiff alleges that this "new way of managing data backups" creates archive files in real-time and allows users to "preview and restore multiple versions of archived files." *See id.* at 6–8. Plaintiff alleges the Asserted Patents improve computer functionality by optimizing various storage locations to capture changes in

---

[1] The United States Patent and Trademark Office ("PTO") issued the '478 Patent on June 25, 2013. *Id.* at 31. As a continuation of the '478 Patent, PTO issued '348 Patent on December 22, 2015. *Id.* at 3, 44. As a continuation of the '348 Patent, PTO issued the '850 Patent on March 10, 2020. *Id.* at 3, 59.

ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS - 2

near real time "so that previous versions of file(s) can be efficiently retrieved and restored, without overburdening . . . network resources in the process." Dkt. No. 1 at 5. Figure 3 of the '478 Patent provides an example timeline depicting Plaintiff's proposed method.



Patent '850 introduced a new wrinkle not found in Plaintiff's other patents in that it described a "method of restoring a file to a previous version of the file, [with] a current version of the file being available at a local storage location." Dkt. 36-4 at 1.

Plaintiff alleges Defendant's backup software, Microsoft OneDrive, infringes on the Asserted Patents. Dkt. No. 1 at 1. Launched in 2007, OneDrive allows users to "share, synchronize, and backup their files." *Id.* at 6. OneDrive users can restore prior versions of a file as well as "archive files in close proximity" to "opening, updating, closing, or saving" a file. *Id.* at 7. Each of the Asserted Patents contain multiple independent and dependent claims, but the

Court will focus its analysis on the following claims as representative of the Asserted Patents as a whole.[2]

Claim 1 of the '478 Patent recites:

> 1. In a computing device, a method for archiving files comprising:
>     detecting an instruction by an operating system to perform an operation on an operating file;
>     creating an archive file from the operating file and storing the archive file in a temporary first storage location temporally proximate to the operation being performed on the operating file and responsive to detecting the instruction;
>     searching the first temporary storage location for the archive file responsive to the occurrence of a first event; and
>     moving the archive file to a second storage location responsive to a second event, the second storage location being a permanent storage location,
>     after storing the archive file in the first temporary storage location, updating a database to indicate that the archive file is located in the first temporary storage location;
>     determining a final destination for the archive file;
>     moving the archive file from the first temporary storage location to an intermediate storage location;
>     updating the database to indicate that the archive file is located in the intermediate storage location; and
>     after moving the archive file to the second storage location, updating the database to indicate that the archive file is located in the second storage location.

Dkt. No. 36-2 at 12.

---

[2] "Courts may treat a claim as representative . . . if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). Here, Defendant argues Claim 1, Claim 15, and Claim 10 are representative of the '478, '348, and '850 Patents, respectively. Dkt. No. 36 at 22–23, 27. Plaintiff appears to accept this designation as it does not argue the other claims provide limitations not found in the representative claims. *See generally* Dkt. No. 37.

ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS - 4

Claim 15 of '348 Patent describes:

> **15.** A method for archiving files, comprising steps of (a) to (d) following:
> (a) the step of detecting an instruction by a resident program in a computing device for performing an operation on an operating file;
> (b) the step of creating an archive file from the operating file and storing the archive file in a temporary storage location temporally proximate to the operation being performed on the operating file and responsive to detecting the instruction;
> (c) the step of identifying presence of the archive file in the temporary storage location responsive to the occurrence of a first event; and
> (d) the step of transmitting the archive file to a second storage location responsive to a second event, the second storage location being an intermediate or a permanent storage location, wherein the first event is different from the second event.

Dkt. No. 36-3 at 14.

Claim 10 of the '850 Patent states:

> **10.** A method of restoring a file to a previous version of the file, a current version of the file being available at a local storage location, comprising the steps of:
> (A) presenting information for a collection of one or more previous versions of the file, the information for the collection including information indicative of at least one or more of previous versions of the file, wherein a restorable representation of each version, V, of the previous versions, is retrievable from a remote storage location, the restorable representation having at least information required for recovering the version V, the remote storage location being accessible through a network;

> (B) responsive to a selection to preview a selected previous version of the file based on the presented information for the collection of (A), presenting a presentable representation of the selected previous version, the selected previous version being one of the previous versions of the file in the presented information for the collection, the presentable representation having at least information required for presenting at least a portion of the selected previous version;
> (C) responsive to a selection to restore the selected previous version, retrieving the restorable representation of the selected previous version from the remote storage location and storing the selected previous version as the current version on the local storage location, the selected previous version available from the restorable representation of the selected previous version.

Dkt. No. 36-4 at 14.

Defendant moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing the Asserted Patents are invalid because they are directed towards an abstract idea that isn't patent-eligible under 35 U.S.C. § 101. Dkt. No. 36 at 7–8.

### DISCUSSION

**I. Standards of review at issue.**

In this case, the Court applies Federal Circuit law to the "substantive and procedural issues unique to and intimately involved in federal patent law," and applies Ninth Circuit law to all other substantive and procedural issues. *See Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 830 F.3d 1335, 1338 (Fed. Cir. 2016).

Patent eligibility "is a question of law that may involve underlying questions of fact." *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019). "Thus, patent eligibility may be resolved at the Rule 12 stage only if there are no plausible factual disputes after drawing all reasonable inferences from the intrinsic and Rule 12 record in favor of the non-movant." *Coop.*

*Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 130 (Fed. Cir. 2022). A court may decide patent eligibility early in the case, before formal claim construction, if the patent holder fails to raise a claim construction dispute or explain how a proposed construction would change the patent eligibility analysis. *See Mortg. Application Techs., LLC v. MeridianLink, Inc.*, 839 F. App'x 520, 525 (Fed. Cir. 2021). Patents are presumed to be valid, *see* 35 U.S.C. § 282(a), but a party asserting an invalidity defense may overcome this presumption with "clear and convincing evidence" proving otherwise. *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 97 (2011).

Under 35 U.S.C. § 101, "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent[.]" The United States Supreme Court has set three limits on the application of § 101: the "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (internal quotation marks omitted). These three limits comprise "the basic tools of scientific and technological work[.]" Because monopolies on these basic tools would stifle innovation, they are not patent-eligible. *Id.*

In *Alice,* the Supreme Court established a two-step framework for distinguishing patents that claim abstract ideas from those that claim patent-eligible applications of those concepts. *See id.* at 217. The *Alice* framework asks "(1) whether the claim is directed to a patent-ineligible concept," and if so, "(2) whether the elements of the claim, considered both individually and as an ordered combination, add enough to transform the nature of the claim into a patent-eligible application." *Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1325 (Fed. Cir. 2017) (internal quotation marks omitted).

In conducting this review, "the Court may limit its examination to the intrinsic record, meaning the claim language, the specification, and the prosecution history[,]" if included with the filings. *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, No. C20-1130 TSZ, 2022 WL 704137,

at *2 (W.D. Wash. Mar. 9, 2022). Courts may also use the specification to "illuminat[e] whether the claims are 'directed to' the identified abstract idea." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767 (Fed. Cir. 2019).

**II. The Asserted Patents satisfy step one of the *Alice* framework.**

At step one of the *Alice* inquiry, courts evaluate "the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter." *Intell. Ventures I LLC*, 850 F.3d at 1325 (internal quotation marks omitted). Abstract ideas are excluded because they are "products of the mind," which include "mental steps, not capable of being controlled by others, regardless what a statute or patent claim might say." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1360–61 (Fed. Cir. 2018) (Lourie, J., concurring). Neither the Supreme Court nor the Federal Circuit, however, have devised a determinative test for what constitutes an abstract idea. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). But in the context of computer innovations and software, the "step-one inquiry often turns on whether the claims focus on "specific asserted improvements in computer capabilities," which are patentable, or "on a process or system that qualifies as an abstract idea for which computers are invoked merely as a tool," which is *not* patentable. *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1377 (Fed. Cir. 2022) (cleaned up). As one court explained:

> Computer innovations may come in the form of either hardware or software, and two categories of patent claims involving computers have generally passed muster under § 101, namely (i) those solving a problem specifically arising in the realm of computers or computer networks; and (ii) those identifying with requisite detail an improvement in computer capability or network functionality.

*Int'l Bus. Machines Corp.*, No. C20-1130 TSZ, 2022 WL 704137, at *2.

**A.     The Asserted Patents focus on claimed improvements in computer capabilities.**

Defendant argues the representative claims of the '478 and '348 Patents are "pure data processing claims[,]" which are not patentable under Federal Circuit precedent. Dkt. No. 36 at 15. Defendant contends the limitations of Claim 1 of the '478 Patent serve abstract functions—detecting, creating, storing data, searching for, moving, storing, and recording data. *See id.* at 15. Defendant likewise argues the limitations of Claim 10 of the '850 Patent describe abstract functions; specifically, presenting data, presenting data in response to a selection, retrieving data in response to a selection, and storing data. *See id.* at 23–24. Defendant also argues the Asserted Patents "rely on 'the ordinary storage and transmission capabilities' of well-known components 'and apply the ordinary functionality in the particular context of' file archiving." *Id.* at 18 (quoting *Whitserve LLC v. Dropbox, Inc.*, 854 F. App'x 367, 372 (Fed. Cir. 2021)).

To which Plaintiff responds, the Asserted Patents advance backup technology beyond the prior art in several ways. The Asserted Patents' specification[3] explains prior products "developed to address data preservation and integrity[,]" including manual and schedule-based backup systems, failed to prevent data loss between backups or "if there was a failure on the computer's storage device." *See* Dkt. No. 36-2 at 9. The specification further identifies the need for a "file capture, preservation[,] and management system that captures files just before and/or just after they have been changed to minimize loss of data between backup events." *Id.* Plaintiff argues the Asserted Patents are directed towards improving backup technology by introducing: "(1) real-time file capture with (2) little impact on system performance, and (3) an offline backup solution." Dkt. No. 37 at 8. Plaintiff argues the method prescribed by the '478 and '348 Patents

---

[3] Because the Asserted Patents are related, they all share the same specification. Dkt. No. 37 at 5.

incorporates a monitoring database[4] and "optimizes the use of various storage locations to capture changes to files in real time (or near real time)[.]" *Id.* at 17, 21. Plaintiff also argues the '850 Patent uses a database "to track the movement of files between the storage locations, so that previous versions of file(s) can be quickly previewed before being efficiently retrieved and restored[.]" *Id.* at 21. Plaintiff contends the '850 Patent claims are not directed to an abstract idea but rather a method to solve "problems unique to computers—allowing for versioning of backed up files and the preview of such versions." *Id.* at 23.

Thus, the Court must consider whether the Asserted Patents are directed to data backups generally, as Defendant argues, or whether they are directed to a specific method that allows real-time data capture and versioning of prior files, as Plaintiff contends. To answer this question, the Court looks to other, analogous cases within the Federal Circuit's body of post-*Alice* decisions for guidance. *See Enfish,* 822 F.3d at 1334 ("[B]oth [the Federal Circuit] and the Supreme Court have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases.").

The Federal Circuit's decision in *Enfish* is instructive. In *Enfish*, the Federal Circuit considered a patent directed to an "innovative logical model for a computer database" organized through a "self-referential" table. *Id.* at 1330. The Federal Circuit held the claimed self-referential table was not abstract because it focused on "an improvement to computer functionality . . . not on economic or other tasks for which a computer is used in its ordinary

---

[4] In its reply, Defendant argues the Court cannot consider the monitoring data base or portions of the specification discussing the "smart data manager 15" because the claims do not recite a monitoring database or a smart data manager 15. Dkt. No. 38 at 6–7. Defendant claims to have raised this argument in its motion because it argued the claims do not describe how to achieve the purported result in a non-abstract way. *Id.* at 7. The Court does not consider this to be the same argument, and therefore, does not consider Defendant's argument relying on *Am. Axle & Mfg., Inc. v. Neapo Holdings LLC*, 967 F.3d 1285, 1293 (Fed. Cir. 2020) given that it was raised for the first time on reply.

ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS - 10

capacity" and the claims were "specifically directed to a *self-referential* table for a computer database" rather than "*any* form of storing tabular data." *Id.* at 1336–37 (emphasis in original).

Here, the same distinction applies because the Asserted Patents are directed towards a specific method of improving file archiving through automatic real-time file management. Claim 1 of the '478 Patent states the method for archiving files "detect[s] an instruction by an operating system to perform an operation on an operating file; [and] creat[es] an archive file from the operating file and stor[es] the archive file in a temporary first storage location temporally proximate to the operating being performed on the operating file[.]" Dkt. No. 36-2 at 13. Claim 10 of the '850 Patent states the method for "restoring a file to a previous version" is "responsive to a selection to preview a selected previous version of the file[.]" Dkt. No. 36-4 at 14. These claims, when considered in the context of the specification and constructed in the light most favorable to Plaintiff, show the focus of the Asserted Patents is the real-time capture of changes to files and restoration of previous versions.

Thus, the Court finds Plaintiff offers a plausible reading of the Asserted Patents as a specific improvement to backup technology that fixes problems in the prior art, including data loss between backups. Because the Asserted Patents are directed to a specific improvement to backup technology, they are not abstract.

## B. Defendant's characterization of the Asserted Patents is overly broad and too simplistic.

Defendant argues the Asserted Patents fall within a "familiar class" of cases invalidating claims related generally to collecting, sorting, displaying, and backing up data. Dkt. No. 36 at

16–17. Defendant identifies *Whitserve LLC v. Dropbox, Inc.*, 854 F. App'x 367 (Fed. Cir. 2021) as "particularly instructive," but the Court finds the case distinguishable.[5]

In *Whitserve*, the Federal Circuit considered a patent "generally relate[d] to 'safeguarding customer/client data when a business outsources data processing to third party Internet-based systems,' by backing up the internet-based data to a client's local computer." 854 F. App'x at 368. The claimed system focused on storing records at different sites for added protection. *Id.* at 372. In essence, the patent proposed storing files on a user's device as well as storing the same files on an internet-based system. The Federal Circuit held, "[w]hether the records are stored onsite of offsite does not alter the conclusion that the claims are directed to the abstract idea of maintaining data records, even if storage of the records is limited to the client's computer, rather than a web server." *Id.* at 371.

Here, the Asserted Patents are not simply applying the abstract idea of storing records in a certain context or location (i.e., onsite vs. offsite)—they go beyond the claims in *Whitserve* by articulating a new way for computers to perform backups that includes real-time data capture and versioning of prior files. *See Sesame Software, Inc. v. Capstorm, LLC*, No. 3:22CV16609-TKW-ZCB, 2023 WL 2783172, at *1 (N.D. Fla. Mar. 14, 2023) (holding that a patented "system for backing-up and restoring records from a historical data archive containing all prior versions of those records" that allowed point-in-time recovery was not abstract); *Mirror Worlds Techs., LLC*

---

[5] In support of the proposition that the Asserted Patents "fall into a familiar class of abstract ideas" invalidated by the Federal Circuit, Defendant relies on three cases along with *Whitserve*: *In re Killian*, 45 F.4th 1373 (Fed. Cir. 2022) (considering a patented method for determining benefit eligibility); *Voit Techs., LLC v. Del-Tom, Inc.*, 757 F. App'x 1000 (Fed. Cir. 2019) (considering a method for performing conventional compression techniques); *Data Scape Ltd. v. W. Digit. Corp.*, 816 F. App'x 461 (Fed. Cir. 2020) (considering patents focused on transferring music files between storage mediums). The Court finds the Asserted Patents distinguishable from those considered in *In re Killian*, *Voit Techs., LLC*, and *Data Scape Ltd.* given the subject matter of those patents is significantly different that Plaintiff's invention.

ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS - 12

*v. Facebook, Inc.,* 588 F. Supp. 3d 526, 538 (S.D.N.Y. 2022) (holding that claims "aimed at improving the storage and retrieval of data on a computer" were not abstract). Moreover, "describing the claims at such a high level of abstraction and untethered from the language of the claims," as Defendant has done," all but ensures that the exceptions to § 101 swallow the rule." *Enfish*, 822 F.3d at 1337. The Court will not make that mistake.

Defendant makes several additional arguments about the validity of the Asserted Patents that the Court will address in turn. First, Defendant argues the claims use result-based language without explaining how the functions are achieved. More specifically, Defendant contends the '478 and '348 Patents have "no limiting rules, algorithms, or instructions as to how to accomplish any of [the] tasks." Dkt. No. 36 at 16. Similarly, Defendant argues Claim 10 of the '850 Patent fails to articulate how its method restores files to previous version given that it provides no technical details. *Id.* at 24.

Plaintiff counters by arguing that the representative claims of the Asserted Patents mirror those of the patents found valid in *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1345 (Fed. Cir. 2018) and *Mentone Sols. LLC v. Digi Int'l Inc.*, No. 2021-1202, 2021 WL 5291802, at *3 (Fed. Cir. Nov. 15, 2021). *Ancora Techs.* involved "methods of limiting a computer's running of a software not authorized for that computer to run." 908 F.3d at 1344. The Federal Circuit held "the claimed advance is a concrete assignment of specified functions among a computer's components to improve computer security." *Id. Mentone Sols.* involved a patent related "to dynamic resource allocation in general packet radio systems." No. 2021-1202, 2021 WL 5291802, at *1.

The Court finds Plaintiff's response falls short. Rather than explain why the claim language of the Asserted Patents is not strictly results-based, Plaintiff provided two cases involving patents unlike anything in this case. Notwithstanding Plaintiff's lack of response, the

Court does not agree with Defendant's argument that the Asserted Patents "do not recite a technical improvement tied to . . . an improvement of an existing technological process." *See* Dkt. No. 38 at 9. Because the Court reads the claims to recite a specific method of improving file archiving through automatic real-time file management, it cannot, at this stage in the litigation, dismiss Plaintiff's case without a claim construction hearing affirming Defendant's argument.

Second, Defendant argues that none of the purported improvements or benefits are captured within the actual claims. To be sure, "[i]t is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude, but the specification helps illustrate the contours of the patented material and can be used to construe the claims." *Sesame Software*, No. 3:22CV16609-TKW-ZCB, 2023 WL 2783172, at *4 n.2 (cleaned up). Here, given the procedural posture, the Court accepts Plaintiff's construction of the claims and their asserted improvements upon the existing art as plausible based on the language of the claims as informed by the specification. *See id.*

Third, Defendant argues even if the Asserted Patents add computer functionality, "increas[ing] the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea." Dkt. No. 36 at 19 (quoting *Intell. Ventures I LLC*, 792 F.3d at 1370). Based on Plaintiff's characterization of the Asserted Patents, they do not merely increase the speed and efficiency at which a computer conducts a backup. Instead, the Asserted Patents recite a method that fundamentally changes the way the archiving process occurs. According to Plaintiff, the "technique of previewing multiple previous versions prior to restoring from network storage was not conventional and was not well-understood at the time of invention." Dkt. No. 1 at 6. The Asserted Patents do not simply boost speed and efficiency given that they seek to change archiving methods from on-demand or on-schedule models to a real-time capture model.

ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS - 14

Finally, Defendant argues the Asserted Patents are not directed at improving computer functionality; instead, Defendant claims, they constitute a new form of an "age-old activity that existed well before the advent of computers and data storage networks" like "redlining" and library "card catalogs." Dkt. No. 36 at 19. But there are several problems with these analogies in that there is arguably no human analogue to the methods described in the Asserted Patents; indeed, the technology at issue contemplates the ability to store files "even when the desired storage location is unavailable," and capture changes in real time "allow[ing] users to recover easily and quickly from any type of information loss, including simple user errors, failed software installations or updates, hardware failures (attached storage devices), and lost or stolen laptop computers." These tasks cannot be accomplished through conventional redlining or a card catalogue system.

Accordingly, the Court finds the Asserted Patents are not abstract under step one of the *Alice* framework. Even if the Court were to find the opposite, however, dismissal would be precluded under step two of the *Alice* framework.

### III. Whether the Asserted Patents present an inventive concept under step two of the *Alice* framework is a dispute of material fact that precludes dismissal.

Even assuming for argument's sake that the Asserted Patents were directed to an abstract idea, fact issues under step two of the *Alice* framework would still preclude dismissal. At the second step, courts "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application." *Alice*, 134 S.Ct. at 2355 (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 78–79 (2012)). This test is met when the invention components involve more than performance of well-understood, routine, conventional activities previously known to the industry. *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 613 (Fed.

ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS - 15

Cir. 2016) (internal quotation marks and brackets omitted). In making this determination, a court "must consider any prior art or other extrinsic evidence proffered by the parties[.]" *Int'l Bus. Machines Corp*, No. C20-1130 TSZ, 2022 WL 704137, at *2.

"Whether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination." *Berkheimer*, 881 F.3d at 1369 (partially vacating summary judgment; finding plaintiff claimed combination of improvements to computer functionality created a factual dispute regarding inventiveness). Thus, a Rule 12 motion to dismiss can only be resolved if the specification itself "admits that the claim elements are well-understood, routine, and conventional." *Riggs Tech. Holdings, LLC v. Cengage Learning, Inc.*, No. 2022-1468, 2023 WL 193162, at *4 (Fed. Cir. Jan. 17, 2023).

Defendant argues the Asserted Patents provide no inventive concept given that the Asserted Patent claims use generic components to implement abstract ideas and "there is nothing to suggest that they are inventive in structure or function." Dkt. No. 36 at 21. Defendant further argues Claim 10 of the 850 Patent takes steps in a conventional order—first processing data, then routing it, and monitoring its reception. *Id.* at 26. Plaintiff argues:

> The claimed combinations of elements in the [Asserted Patents] improve on the prior art beyond what may have been well-understood and routine, eschewing and criticizing existing backup technology and claiming a novel system which monitors computer instructions, detects changes, implements a holding queue, tracks backup status, present a version collection, presents previews of those versions, restores file versions selected by the user, and, ultimately, stores archived files remotely.

Dkt. No. 37 at 27. Although Plaintiff fails to support its argument with citations to the record, the Court finds it supported by the specification. As an initial matter, the specification does not admit that the methods described in the claims were "well-understood, routine, and conventional." Instead, the specification contrasts and teaches that conventional backup systems at the time (i.e., manual, schedule based, and mirroring) were flawed. It follows necessarily from

this premise that the claims offered a novel—that is, unconventional—solution to address data loss in the form of real-time archiving. Dkt. No. 36-2 at 9. The fact that many of the hardware components of the Asserted Patents appear to be "generic" is largely immaterial because they are software patents defined by "logical structures and processes" rather than any "particular physical features." *Enfish*, 822 F.3d at 1338.

Accordingly, the Court finds there is a dispute of fact as to whether the Asserted Patents involved components performing well-understood, routine, conventional activities, or an inventive concept.

## CONCLUSION

As a result, the Court rejects at this early stage of the case Defendant's argument that the Asserted Patents are invalid because they are directed to a patent-ineligible concept. Accordingly, Defendant's motion for judgment on the pleadings is DENIED.

Dated this 12th day of June, 2023.

Jamal N. Whitehead
United States District Judge